UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RANEY RICHARDSON,

          Petitioner,

vs.                               Case No. 3:18-cv-79-J-25PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

          Respondents.

_____

**<u>ORDER</u>**

**I.  INTRODUCTION**

Petitioner, Raney Richardson, challenges his state court (Duval County) conviction for felony murder and attempted armed robbery through a Petition for Writ of Habeas Corpus (Petition) (Doc. 1) pursuant to 28 U.S.C. § 2254. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 13).[1] Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. 26) followed. The Petition is timely filed. <u>See</u> Response at 15.

_____

[1] The Court hereinafter refers to the Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. 13) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced.

## II. EVIDENTIARY HEARING

Petitioner has the burden to establish a need for an evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012). In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Thus, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III. CLAIMS OF PETITION

The Petition presents two grounds for habeas relief: (1) the ineffective assistance of appellate counsel for failure to raise a claim on direct appeal that the trial court abused its discretion by failing to permit completion of Petitioner's psychological evaluation and conduct a competency hearing, and (2) the ineffective assistance of trial counsel for failure to object to

the jury verdict finding Petitioner guilty of first-degree murder and attempted armed robbery as charged in the indictment. Petition at 6-7. These claims are exhausted. Response at 25-26, 40-41.

### IV.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." Id. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (per curiam)), petition for cert. filed, (U.S. Aug. 2, 2019) (No. 19-5438).

Applying the statute as amended by AEDPA, federal courts may not grant habeas relief unless one of the claims: "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court

3

proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019).

Thus, in order to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders, 911 F.3d at 1351. As noted in Richter, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

In undertaking its review, this Court is not obliged "to flyspeck the state court order or grade it." Meders, 911 F.3d at 1349. Indeed, specificity and thoroughness of the state court decision is not required; even if the state court fails to provide rationale or reasoning, AEDPA deference is due "absent a conspicuous misapplication of Supreme Court precedent." Id. at 1350 (citation and quotation marks omitted).

Of importance, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). But, this presumption of correctness applies only to findings of fact, not mixed

4

determinations of law and fact. <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), <u>cert</u>. <u>denied</u>, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Once a claim is adjudicated in state court and a prisoner seeks relief in the federal court system, AEDPA's formidable barrier to habeas relief comes into play, and it is very difficult for a petitioner to prevail under this stringent standard. As such, state-court judgments will not easily be set aside once the Court employs this highly deferential standard that is intentionally difficult to meet. <u>See</u> <u>Richter</u>, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. <u>Id</u>. In

sum, application of the standard set forth in 28 U.S.C. § 2254(d) ensures that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, and not a mechanism for ordinary error correction. Richter, 562 U.S. at 102-103 (citation and quotation marks omitted).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises a claim of ineffective assistance of trial counsel. To prevail on his Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential standard, requiring a most deferential review of counsel's

decisions. <u>Richter</u>, 562 U.S. at 105. Not only is there the "<u>Strickland</u> mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. <u>Nance</u>, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

<u>Nance</u>, 922 F.3d at 1303.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The two-part <u>Strickland</u> standard is also applicable to Petitioner's claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit describes <u>Strickland</u>'s governance of this type of claim:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. <u>See Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to

trial counsel under <u>Strickland</u>.") (quotation
marks omitted). Under the deficient
performance prong, the petitioner "must show
that counsel's representation fell below an
objective standard of reasonableness."
<u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at
2064.

<u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1331 (11th Cir.

2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel,

the combination of <u>Strickland</u> and § 2254(d) requires a doubly

deferential review of a state court decision. <u>See</u> <u>Richter</u>, 562

U.S. at 105. When considering deficient performance by appellate

counsel,

a court must presume counsel's performance was
"within the wide range of reasonable
professional assistance." <u>Id</u>.[2] at 689, 104
S. Ct. 2052. Appellate counsel has no duty to
raise every non-frivolous issue and may
reasonably weed out weaker (albeit
meritorious) arguments. <u>See</u> <u>Philmore</u> <u>v.</u>
<u>McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009).
"Generally, only when ignored issues are
clearly stronger than those presented, will
the presumption of effective assistance of
counsel be overcome." <u>Smith</u> <u>v.</u> <u>Robbins</u>, 528
U.S. 259, 288, 120 S. Ct. 746, 145 L.Ed.2d 756
(2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644,
646 (7th Cir. 1986)); <u>see</u> <u>also</u> <u>Burger v. Kemp</u>,
483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d
638 (1987) (finding no ineffective assistance
of counsel when the failure to raise a
particular issue had "a sound strategic
basis").

---

[2] <u>Strickland</u>, 466 U.S. at 689.

<u>Overstreet</u>, 811 F.3d at 1287; <u>see</u> <u>also</u> <u>Owen v. Sec'y, Dep't of</u> <u>Corr.</u>, 568 F.3d 894, 915 (11th Cir. 2009) (footnote omitted) (since the underlying claims lack merit, "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel"), <u>cert</u>. <u>denied</u>, 558 U.S. 1151 (2010).

To satisfy the prejudice prong, a petitioner must show "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted), <u>cert</u>. <u>denied</u>, 543 U.S. 1080 (2005); <u>see</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (per curiam) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted), <u>cert</u>. <u>denied</u>, 559 U.S. 1010 (2005).

## VII.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In his first ground, Petitioner raises the claim of ineffective assistance of appellate counsel for failure to raise a claim on direct appeal that the trial court abused its discretion by failing to permit completion of Petitioner's psychological evaluation and conduct a competency hearing.  Petition at 6.

Petitioner exhausted this claim by raising the issue in a petition for writ of habeas corpus filed in the First District Court of Appeal (1st DCA). Ex. M. The 1st DCA denied the petition on its merits. Ex. N. It also denied rehearing. Ex. O.

The record demonstrates the following. Appellate counsel raised one ground on direct appeal: the court erroneously considered defendant's statements to police when considering whether a corpus delicti had been established (Florida law does not allow admission of a confession to prove the corpus delicti). Ex. I at i. As to the competency issue, appellate counsel was aware that "there was some investigation of [Petitioner's] competency to stand trial after the first indictment, resulting in the conclusion that you were competent to proceed." Ex. M, Exhibit A, April 9, 2010 Letter of Public Defender (Appellate Counsel) to Petitioner. On direct appeal, the 1st DCA per curiam affirmed. Ex. L.

The record shows Petitioner pursued similar claims concerning his competency in his Second Amended Motion for Postconviction Relief (Rule 3.850 motion). Ex. Y. The trial court provided an in-depth summary of the proceedings regarding Petitioner's suggestion of mental incompetence repeated here to provide context for Petitioner's current ground for federal habeas relief:

The record reflects that Defendant was evaluated on six separate occasions for mental capacity. On January 6, 2009, Assistant Public Defender Joseph Debelder filed a Suggestion of Mental Incompetence to Proceed, which was supported by a December 31, 2008 mental evaluation by Dr. Ernest C. Miller. (Ex. F.) According to the mental evaluation, Dr. Miller took into consideration Defense counsel's cover letter, the Arrest and Booking Report, and corresponding supplements. Ultimately, Dr. Miller recommended that the court deem Defendant incompetent to proceed.

The State successfully moved the trial court to order a second evaluation by a different doctor. On February 25, 2009, the State filed a mental evaluation by its expert, Dr. William R. Meadows. (Ex. G.) Dr. Meadow's evaluation was more thorough than that of Dr. Miller. Dr. Meadows reviewed the clinical interview with Defendant, the Arrest and Supplemental police reports, Dr. Miller's December 31, 2008 evaluation, the daily log of Defendant's behavior at the detention facility, including recordings of telephone conversations Defendant had before and after Dr. Miller's evaluation. Dr. Meadows' report points out that Dr. Miller did not review any recordings of Defendant's telephone calls at the detention facility or any other collateral information. He also notes that, despite Dr. Miller's recommendation of incompetence, Dr. Miller could not rule out Malingering. (Ex. G at 3.) Dr. Miller's report shows that Defendant met the criteria for Malingering and that there is no significant evidence to support a diagnosis of mental illness or mental deficit; as a result, Dr. Meadows recommended that Defendant be considered competent. (Ex. G at 7.) As Defendant states in his Motion, Defendant's new counsel, Assistant Public Defender Greg Messore, withdrew the Suggestion of Mental Incompetence on April 16, 2009. (Def's Mot. at 26.)

On September 14, 2009, counsel filed a second Suggestion of Mental Incompetence to Proceed, supported by a second evaluation from Dr. Miller, which took place on September 11, 2009. (Exs. H; I, respectively.) Dr. Miller's second evaluation states, *inter alia*, that Defendant's behavior changed when he interacted with mental health personnel versus correctional officers or law enforcement and that "a manipulative component was identifiable." (Ex. I at 2-3.) Dr. Miller then recommended the Defendant be considered incompetent "to be on the safe side [and] mainly […out] of an abundance of caution." (Ex. I at 3).

Also on September 14, 2009, the State filed the September 11, 2009 results of a second mental evaluation by Dr. Meadows. (Ex. J.) In this evaluation, Dr. Meadows states that Defendant was dramatic and appeared disingenuous and motivated to fake illness. (Ex. J at 4). Dr. Meadows notes that Defendant met the criteria for Malingering and that all the collateral sources of information support the conclusion that Defendant was faking mental illness to avoid prosecution and that he should be considered competent to proceed. (Ex. J at 7.)

On September 17, 2009, the State filed a third round of reports from Dr. Miller and Dr. Meadows. (Exs. K; L, respectively.) Dr. Miller's third report states that he reviewed Defendant's old chart, his two previous interviews, the Arrest and Booking Report, the two previous psychiatric examinations by Dr. Meadows, telephone recordings of Defendant at the detention center, and the results of the M-Fast test. (Ex. K at 1.) Dr. Miller reported that the information he reviewed contained clear and compelling indications of a "strong persistent manipulative/malingering component present in Defendant's purpose […

to] delay or avoid trial." (Ex. K at 5.) Dr. Miller's third evaluation recommended that Defendant be considered competent. (Ex. K at 5.)

Dr. Meadows' third report highlighted that new telephone calls, recorded since his September 11, 2009 evaluation, further supported the fact that Defendant was malingering in an attempt to circumvent prosecution. (Ex. L at 1-2). Dr. Meadow's evaluation recommended that Defendant be considered competent to proceed. (Ex. L at 1-2).

On September 17, 2009, the trial court held a hearing with the Assistant State Attorney, Defense counsel, and Defendant present. During this hearing, Defense counsel withdrew the Suggestion of Mental Incompetent to Proceed, stating it could no longer be pursued in good faith. (Ex. M at 15.) With both doctors in agreement that Defendant was competent to proceed, counsel also had no good-faith basis to file a motion to suppress. Counsel also stated that he had discussed this issue with Defendant. (Ex. M at 18-19.) Without a good-faith basis on which to proceed, counsel could not have argued mental incompetence. Counsel's performance cannot be deemed deficient for failure to raise a nonmeritorious issue. See Lugo v. State, 2 So.3d 1, 21 (Fla. 2008); see also Parker v. State, 611 So. 2d 1224 (Fla. 1992).

Ex. Y at 128-30.

The key to understanding Petitioner's claim is that he relies on two written orders signed by the trial court on September 18, 2009, appointing Dr. Miller and Dr. Meadows to conduct competency evaluations. Ex. A at 160-63. Upon review, the oral

pronouncement of these written orders occurred on Monday, September 14, 2009.[3]  Ex. C at 385-86.  On that same date, Petitioner's counsel, Mr. Messore, filed a Suggestion of Mental Incompetence to Proceed.  Ex. A at 140-42.  On September 17, 2009, the state announced additional examinations had taken place, with Dr. Miller seeing Petitioner on Monday, September 14, 2009, and Dr. Meadows seeing Petitioner on Wednesday, September 16, 2009. Ex. C at 389.  See Ex. A at 153-57 (Dr. Miller's September 14, 2009 letter of evaluation pursuant to court's September 14, 2009 order); id. at 158-59 (Dr. Meadows' September 16, 2009 evaluation). Based on these evaluations (both finding competency to proceed), on September 17, 2009, Mr. Messore withdrew the suggestion of incompetency he had filed on Monday, September 14, 2009, stating he no longer had a good faith basis to pursue that claim.  Ex. C at 389.

The record shows the court permitted completion of the psychological evaluations, as ordered.  Both doctors found Petitioner competent to proceed.  Although Petitioner may be dissatisfied with this result, he was not deprived of due process

---

3 There is no explanation in the record for the delay in dating and filing the written orders of appointment.  It is clear, however, that the oral pronouncement of the orders occurred on September 14, 2009, and both doctors complied and submitted reports.

of law under the Fourteenth Amendment.  Furthermore, Petitioner's appellate counsel was not deficient for failing to raise a non-meritorious claim.

To the extent Petitioner asserts that his appellate counsel was ineffective for failure to raise a claim that the trial court abused its discretion for failure to conduct a competency hearing, this claim too has no merit.  Petitioner raised a similar claim in his Rule 3.850 motion, asserting his trial counsel was ineffective for failure to pursue the claim of incompetence, and that because Petitioner had been declared incompetent, he was entitled to a competency hearing before the trial court could declare him competent.

The trial court, in denying the claim of ineffective assistance of trial counsel held:

> Contrary to Defendant's claims, Defendant was never declared incompetent to proceed.  As noted in this Court's analysis of ground one, counsel filed the first Suggestion of Mental Incompetence to proceed on January 6, 2009, and Doctors Miller and Meadows initially disagreed as to whether the trial court should deem Defendant competent to proceed.  (Exs. F; G.)  As Defendant states in his Motion, counsel withdrew the first Suggestion of Mental Incompetence on April 16, 2009.  (Def's Mot. at 26.)  On September 14, 2009, defense counsel filed a second Suggestion of Mental Incompetence to Proceed, which led to second and third rounds of evaluations.  During the September 17, 2009 hearing, the third round of evaluations was

> filed, and each doctor recommended Defendant
> was competent to proceed. (Exs. K; L; M at
> 15-16.) Defense counsel then withdrew the
> September 14, 2009 Suggestion of Incompetence,
> stating that he could no longer pursue the
> motion in good faith. (Ex. M at 15.) Thus,
> the trial court never declared Defendant
> incompetent to [proceed], so he was not
> entitled to a competency hearing.

Ex. Y at 136-37.

To prevail on a claim of ineffective assistance of appellate counsel, the burden is heavy. A petitioner must:

> first show that his counsel was objectively
> unreasonable, see Strickland, 466 U.S., at
> 687-691, 104 S. Ct. 2052, in failing to find
> arguable issues to appeal—that is, that
> counsel unreasonably failed to discover
> nonfrivolous issues and to file a merits brief
> raising them. If [a petitioner] succeeds in
> such a showing, he then has the burden of
> demonstrating prejudice. That is, he must show
> a reasonable probability that, but for his
> counsel's unreasonable failure to file a
> merits brief, he would have prevailed on his
> appeal. See id., at 694, 104 S. Ct. 2052
> (defendant must show "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different").

Smith v. Robbins, 528 U.S. 259, 285-86 (2000).

Here, Petitioner has not satisfied the Strickland requirements with respect to this claim of ineffective assistance of appellate counsel. Indeed, "there is no constitutional duty to raise every nonfrivolous issue." Grossman v. Crosby, 359 F.Supp.2d 1233, 1261 (M.D. Fla. 2005) (citation omitted).

16

Petitioner has not shown that the 1st DCA decided this claim in a manner contrary to Strickland, or that the 1st DCA's application of Strickland was objectively unreasonable. With respect to the underlying claim that the trial court abused its discretion by failing to permit completion of Petitioner's psychological evaluation and conduct a competency hearing, appellate counsel could have reasonably decided to winnow out weaker and seemingly non-meritorious arguments.

Upon the filing of Petitioner's state petition for writ of habeas corpus, Ex. M, the 1st DCA reviewed Petitioner's arguments concerning the claim Petitioner argued his appellate counsel should have raised on direct appeal, and the 1st DCA denied this claim, finding it to be without merit, thus making its determination that no appellate relief would have been forthcoming on this particular ground. Ex. N. Thus, Petitioner has failed to show a reasonable probability the outcome of the direct appeal would have been different had appellate counsel argued as Petitioner's suggests appellate counsel should have on direct appeal.

The appellate court's denial of relief on the ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of Strickland. Therefore, Petitioner is not entitled to habeas relief on ground one.

The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this ground because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground one is due to be denied.

## B. Ground Two

In ground two, Petitioner claims trial counsel was constitutionally ineffective for failure to object to the jury verdict finding Petitioner guilty of first-degree murder and attempted armed robbery as charged in the indictment. Petition at 7. Although not a model of clarity, this claim is more clearly delineated in the supporting facts, in which Petitioner contends the indictment was defective because of the use of the phrase "or another" in the second count, the attempted robbery count. Id.

The record demonstrates the following. Petitioner was originally charged by information with attempted armed robbery by attempting to take money or other property, the property of Michael Jones, from the person or custody of Michael Jones. Ex. A at 5.

18

In a superceding indictment, Petitioner was charged with attempted armed robbery by attempting to take money or other property, the property of Michael Jones **or another**, from the person or custody of Michael Jones **or another**. <u>Id</u>. at 40 (emphasis added).

Petitioner asserts his counsel's performance was constitutionally deficient for failure to object to the verdict of guilty as charged in the indictment because it was unclear whether the jury found Petitioner guilty of the crime against Michael Jones or some other person. Petition at 8-9. In his Rule 3.850 motion, Petitioner claimed his trial counsel rendered ineffective assistance for failing to object to his conviction on the ground the state failed to prove count two beyond a reasonable doubt as the indictment contains the phrase "or another," confusing the jury as to the identity of the victim. Ex. Y at 42-43.

In its order, the trial court set forth the two-pronged <u>Strickland</u> standard before addressing the grounds for relief. <u>Id</u>. at 127. In its review, the court mistakenly reviewed the original indictment, Ex. A at 14, not the superceding indictment. <u>Id</u>. at 40. Thus, it concluded that the indictment did not contain the phrase "of [sic] another," and found counsel's performance could not be deemed deficient. Ex. Y at 142.

Petitioner appealed the denial of his Rule 3.850 motion, bringing to the 1st DCA's attention the trial court's mistake in

reliance upon the original indictment and providing the appellate court with a copy of the superceding indictment. Ex. BB at 6; id. at Appendix A, Exhibit A. The 1st DCA per curiam affirmed denial of post-conviction relief without explanation. Ex. DD.

If the last state court to decide a federal claim provides an explanation for its merits-based decision in a reasoned opinion, the district court simply reviews the specific reasons given by the state court and defers to those reasons, if they are reasonable. But, if no explanation is provided, for example, the opinion simply states affirmed or denied, the district court should "look through" the unexplained decision to the last related state-court decision that provides relevant rationale. The district court presumes the unexplained decision adopted the same reasoning as the lower court, however, this presumption is not irrebutable, as strong evidence may refute it. See Kernan v. Hinojosa, 136 S. Ct. 1603, 1606 (2016) (per curiam). In an effort to rebut the presumption, the state may attempt to show the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Wilson, 138 S. Ct. at 1192.

There is no question the 1st DCA had the superceding indictment before it as it was provided to the appellate court by

Petitioner.  Ex. BB, Appendix A, Exhibit A.  Respondents assert the "look through" presumption is rebutted because the unexplained affirmance most likely relied on different grounds obvious in the record the 1st DCA reviewed.[4]  Response at 43.  Tellingly, the record demonstrates Petitioner confessed to the police that he went to the apartment planning to rob the people in it, including Michael Jones.  See Ex. Y at 102-107, 197-98; Ex. Z at 212, 329, 331-32, 337-39, 346-48, 374-80; Ex. AA at 411-16, 420-35.

The Court is convinced that fair-minded jurists could agree with the appellate court's decision.  Richter, 562 U.S. at 102 ("[AEDPA] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.").  As the state appellate court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief.  The appellate court's decision was not so lacking in justification that there was an error well understood and comprehended in law beyond any possibility for fairminded disagreement.

---

[4] Alternative grounds for affirmance were not briefed by the state as it filed a Notice That State Will Not File Answer Brief Pursuant to Florida Rule of Appellate Procedure 9.141(b).  Ex. CC.

To the extent a *de novo* must be undertaken, this Court finds the trial court record is replete with references to Petitioner planning to rob Michael Jones and the other people in the apartment. To lay the groundwork, the state, in its opening statement said Petitioner told the police his plan was "to rob them." Ex. D at 18, 24, 25. Kala Coston testified, when she saw a man in a mask, she thought there was going to be a robbery and she feared for her life. Id. at 92. Detective Victor Barker testified Petitioner said he was at the top of the stairs because he was going to rob Kala and the people in the apartment. Ex. E at 225. The jury heard the DVD of Petitioner's confession. Id. at 235. Petitioner said Kala told him to come in and rob everybody in the apartment. Id. at 261-62. Petitioner added he was going to rip Michael Jones off. Id. at 270, 277. In closing, the state reiterated that Petitioner's plan was to rob everyone in the apartment. Id. at 353, 378.

Of note, the record also shows the trial court, in addressing a corpus delicti issue, reasoned:

> The crime in question here that was attempting to be committed as charged by the State was the armed robbery. And the victim in this case had money, there were persons who knew he had a large sum of money, approximately – I haven't heard exactly the amount yet, but $2500 to $3000. There was discussion with more than one person on the – in the room where the witness who walked out

the door with him was on the phone, Kay or
Kala.  She was on the phone.  There were
people in the room who heard some discussion
about a drug deal, people on the other end of
the phone who heard some discussion about the
drug deal.  So clearly there was money or
other property available to be taken from the
victim, in this case money.  There was clearly
evidence presented, corroborating evidence of
the defendant's statement of force, violence,
assault or putting in fear during the course
of the taking, although clearly they never got
to the taking itself.

The putting in fear language in the
instruction so that the victim does not resist
requires that the victim be in fear of death
or great bodily harm, someone crouched with a
gun, covered completely in black except for
the eye holes, would and **did, in fact, put the
other person, Kala, in fear, both of them
[Kala and Michael Jones] ran back into the
apartment.**  The property, money, is of some
value, whatever that value was, $2500 to
$3000, and obviously an attempt to take that
kind of money would be an attempt with the
intent to deprive a person of that money if
they were seeking to rob him or to appropriate
that money to someone other than the owner of
the money.

Ex. D at 200; Ex. E at 205-206 (emphasis added).

Later in the trial, defense counsel said he had reviewed the

jury instructions and they were fine.  Ex. E at 383.  The trial

court charged the jury with attempted robbery as set forth in the

superceding indictment.  Id. at 391-95.  Neither the state nor the

defense made exceptions or objections to the jury instructions.

Ex. F at 417.  The jury returned a verdict of guilty as charged

in the superceding indictment.  The testimony and evidence adequately support the verdict.

Notably, "[t]he crime of attempted robbery requires only the formation of an intent to take money or property of another and an overt act capable of accomplishing the goal."  Green v. State, 655 So. 2d 208, 209 (Fla. 3d Dist. App. 1995) (per curiam) (citing § 812.13, Fla. Stat. (1993); § 777.04, Fla. Stat. (1993); Mercer v. State, 347 So.2d 733 (Fla. 4th DCA 1977)).  The record is replete with competent, substantial evidence supporting the jury's verdict.  Petitioner has neither shown deficient performance nor prejudice under the Strickland standard of review.  Thus, Petitioner is not entitled to habeas relief on ground two of the Petition.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2.    This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of**

**appealability.**[5]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of October, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/7
c:
Raney Richardson
Counsel of Record

---

[5] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

25